

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

Angela Tang
Special Assistant United States Attorney
Angela.Tang@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4959
MAIN: 410-209-4800
FAX: 410-962-3091

May 16, 2016

Douglas Miller, Esquire
100 South Charles Street
BankAmerica Tower II, Suite 900
Baltimore, Maryland 21201

    Re:    *Unites States v. Gary Scott Conway*, Criminal No.: JFM-15-0467

Dear Mr. Miller:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 20, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count Two of the Superseding Indictment now pending against him, which charges him with Transportation of Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and 18 U.S.C. § 2256. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

## Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.    That the Defendant knowingly transported a visual depiction in interstate or foreign commerce, by any means including by computer; and

        b.    The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; and

        c.    Such visual depiction is of a minor engaged in sexually explicit conduct; and

        d.    That the Defendant knew that at least one of the persons in such

visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

3. Although not an element of the offense, the government would prove that the Defendant committed the charged offense having been previously convicted under the laws of any State (specifically, here, in the Circuit Court for Harford County in Case Number 12-K-03-001012) relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography such that the Defendant will be sentenced to the enhancement penalties pursuant to Title 18, United States Code, Section 2252(b)(1).

## Penalties

4. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for not less than 15 years and not more than 40 years, a maximum fine of up $250,000, and supervised release of not more than life and not less than 5 years. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

5. The Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

6. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

7. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

8.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Count Two (Transportation of Child Pornography):

   a.  Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level is **22**.

   b.  Pursuant to U.S.S.G. §2G2.2(b)(2), there is an upward adjustment of **2** levels because the material involved prepubescent minors who had not attained the age of 12 years.

   c.  Pursuant to U.S.S.G. § 2G2.2(b)(5), there is an upward adjustment of **5** levels because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

   d.  Pursuant to U.S.S.G. § 2G2.2(b)(b)(6), there is an upward adjustment of **2** levels because the offense involved the use of a computer.

   e.  Pursuant to U.S.S.G. § 2G2.2(b)(7)(D), there is an upward adjustment of **5** levels because the offense involved 600 or more images.

   f.  Thus the adjusted offense level is **36**.

Relevant Conduct/Count One (Failure to Register):

9.  The base offense level is 16 because the defendant was required to register as a Tier II offender, pursuant to U.S.S.G § 2A3.5(a)(1).

Grouping:

10. There is no grouping enhancement because the relevant conduct (16) is more than 9 or more levels less serious than Count Two (36), pursuant to U.S.S.G § 3D1.4.

11. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

4

12. Thus, the final anticipated offense level is **33**.

13. The Defendant understands that there is no agreement as to his criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

14. This Office and the Defendant agree that the following sentencing guideline factor is the *sole sentencing guideline factor* in dispute: The Defendant reserves the right to argue that his criminal history category substantially over-represents the seriousness of the his criminal history or the likelihood that the Defendant will commit other crimes and, as a result, a downward departure is warranted under U.S.S.G. § 4A1.3(b). This Office objects to the applicability of U.S.S.G. § 4A1.3(b).

15. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, other than the dispute noted in Paragraph 14 above, no *other* offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the Defendant

16. The Defendant specifically agrees that his prior conviction in the Circuit Court for Harford County in Case Number 12-K-03-001012 is "a prior conviction under ....the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children." The Defendant agrees not to seek any relief, such as by *coram nobis* or otherwise, or to attack in any way the legality and viability of his prior conviction either in state court or in federal court. Failure to abide by this provision renders null and void this Office's obligations to the Defendant set forth in this agreement.

### Obligations of the United States Attorney's Office

17. Both parties reserve the right to recommend any lawful sentence using the factors outlined at 18 U.S.C. § 3553(a).

18. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

19. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

20. This Office further agrees not to charge the Defendant with any offense under Title 18, United States Code, Chapter 110, based on his statements to the Ada County Sheriff's Office or the Federal Bureau of Investigation on August 26-27, 2015.

## Restitution

21. The Defendant agrees that, under Title 18 United States Code, Sections 3663A, 2259, and 3771, restitution to child pornography victims is mandatory. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

## Collection of Financial Obligations

22. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

23. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except that (i) the

Defendant reserves the right to appeal any term of imprisonment to the extent it exceeds 235 months (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment); and (ii) the Defendant reserves the right to appeal any order of restitution.

        c.        Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

24.        The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

21.        The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court

should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

_____
Angela Tang
Special Assistant United States Attorney
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

05-18-2016
Date

Gary Scott Conway

I am Gary Scott Conway's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5/18/2016
Date

Douglas Miller, Esq.

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Gary Scott Conway ("Conway"), age 45, was a resident of Havre de Grace, Maryland. As described below, Conway collected child pornography via the internet and uploaded child pornography to an internet-based file storage service.

On March 30, 2015, Conway created an account on Dropbox.com (Dropbox). He listed a user name of "John Lizard" and used the email address conwayscott2@gmail.com. Dropbox is a free internet service that allows users to store files online. These files are accessible from any internet-capable device. Dropbox provides 2 Gigabytes of storage free of charge.

From October 2014 through July 2015, Conway used the internet website Omegle.com (Omegle) to communicate with adults and minor children. Omegle is a chat website which allows users to chat with other users anonymously, based on shared interests. Omegle supports typed chat, video and audio chat, and file exchange. In Omegle, Conway entered search terms relating to sex, video chats, and minor boys.

On May 29, 2015, representatives of Dropbox notified the National Center for Missing and Exploited Children (NCMEC) that Conway's Dropbox account contained at least 35 videos of child pornography. The Harford County Sheriff's Office investigated and determined that the files were uploaded from Conway's residence in Havre de Grace, Maryland. Harford County Sheriff's Office executed a search warrant at Conway's residence at 205 Pointe Way, Apartment A in Havre de Grace, Maryland on July 8, 2015. Conway was advised of his *Miranda* rights and agreed to speak with investigators. Conway acknowledged that he uses the email address conwayscott2@gmail.com, which is affiliated with the Dropbox account, but he denied that he had a Dropbox account. Investigators seized various items of digital media, including an Apple brand "Mac" desktop computer. Forensic analysis of that computer revealed at least 350 images of child pornography, including depictions of prepubescent children engaged in sexual acts.

Conway's Dropbox account was examined pursuant to a search warrant, and was found to contain approximately 3,174 unique images and 319 unique videos of child pornography. The videos and images depicted prepubescent boys and girls engaged in sexual acts with adult men, including oral sex and anal sex, including multiple videos that depicted penile penetration of prepubescent boys' anuses.

On or about July 14, 2015, Conway took his wife's vehicle and fled the state of Maryland. Conway did not update the Maryland Sex Offender Registration authorities, even though he knew that he was required to update his registration anytime he would be absent from his primary residence for 7 or more days. He travelled to Virginia, Tennessee, New Mexico, Arkansas, Oklahoma, Texas, California, and Arizona.

While in Arizona, Conway stayed at the Los Abrigados Resort in Sedona for 12 days, during which time he did not notify the state of Arizona of his sex offender status. During Conway's stay at the Los Abrigados Resort, two families complained to the local authorities that Conway made inappropriate sexual advances toward their teenage sons. Specifically, one 17 year old boy complained that Conway complimented his eyes, then called the boy "nasty," which the boy interpreted as a sexual overture. Another teenaged boy complained that Conway told him, "I would bed you any day," and also stated the he wanted to "blow" the boy, which the boy interpreted as referring to oral sex. After being questioned by Sedona Police, Conway denied that he made any inappropriate sexual advances. Conway then left Sedona before his resort reservation was completed. He travelled to Six Flags Magic Mountain in California, and then to Idaho, where he remained because his car broke down and he ran out of money.

Conway stayed in Idaho for more than three weeks, never notifying the state authorities of his sex offender status. He was arrested in Idaho on August 26, 2015 based on federal arrest warrant. Following his arrest, Conway was questioned by officers of the Ada County Sheriff's Office and by agents of the Federal Bureau of Investigation. Following advisement and waiver of his rights, Conway admitted that he uploaded videos of child pornography into his Dropbox account. He admitted that he received the files by trading with other individuals over the internet, that he viewed the files in his Dropbox account, and that he periodically replaced files in the Dropbox account with newer files that he preferred.

Conway also made the following statements regarding his use of the website Omegle:

    a. That he used Omegle to engage in video chat sessions with teenage boys under the age of 18 years, in which Conway would direct the teenage boys to masturbate or display their genitalia.

    b. That he viewed the live video streams generated by these teenage boys and also broadcast video of himself masturbating to the teenage boys.

    c. That while using Omegle, he entered terms of interest, such as "little boys," "young boys," "boys penises," "boy's pictures," and "boys videos," which enabled him to chat with persons with common interests.

    d. That he exchanged child pornography videos and images with other adult users of Omegle, both sending and receiving child pornography.

    e. That many of the videos that he received from adult Omegle users contained apparent screen captures of video chats with minor children, in which the boys masturbated and took direction from the users with whom they were chatting.

Conway made the following statement regarding his use of his Dropbox account and computer usage:

   a. That beginning in February or March, 2015 and continuing until July, 2015, he saved the images and videos of child pornography from Omegle to his Dropbox account.

   b. That when his Dropbox account approached the 2 Gigabyte free size limit, he deleted images and videos to replace them with images and videos that he preferred. That he maintained his Dropbox account near its full size of 2 Gigabytes, the largest size available free of charge.

   c. He used an Apple "Mac" desktop computer in his home to download the child pornography directly to his Dropbox account.

   d. That he regularly deleted his internet history to avoid detection of his child pornography activities.

   e. On another website, he searched for "CP," "KP," "child porn," and "kiddie porn," seeking child pornography.

During interviews with authorities, Conway made the following additional statements:

   a. [REDACTED] Conway stated that he repeatedly molested Minor Victim 1, beginning the victim was 11 years old, and continued up until approximately May 2015, when Minor Victim 1 tuned 13 years old. He stated that he cared for Minor Victim 1, who is autistic, non-verbal and incapable of bathing or dressing himself. Conway stated that he first abused Minor Victim 1 by touching the child's penis while he bathed Minor Victim 1. Conway stated that once Minor Victim 1 hit puberty, he performed oral sex on Minor Victim 1 and anally sodomized Minor Victim 1 as Minor Victim 1 resisted. He stated that he attempted to teach Minor Victim 1 how to perform oral sex on Conway, but his efforts failed because Minor Victim 1 would bite Conway's penis. He stated that he took sexually explicit pictures of Minor Victim 1's penis using his Samsung Galaxy cellular phone, but that he later deleted the images to avoid detection. During his interview, Conway acknowledged that Minor Victim 1 is autistic and non-verbal. Conway stated that Minor Victim 1 is incapable of bathing himself or dressing himself.

   b. [REDACTED] Conway stated the he had sexual contact with Minor Victim 2 on multiple occasions. He stated that he rubbed Minor Victim 2's vagina with his hand on multiple occasions when she was approximately 8 years old. He also showed Minor Victim 2 his penis and licked her nipples. When interviewed by a police officer with specialized training in interviewing victims of child sexual abuse, Minor Victim 2 did not disclose any abuse.

   c. [REDACTED] Conway stated that when Minor Victim 3 was an infant, he used his penis to penetrate Minor Victim 3's mouth and touched her hands with his penis. Minor Victim 3 was in Conway's care and custody at the time he admits to molesting her.

3

      d.      Conway stated that he molested a female infant in 1990 while he was on active duty in the Navy. He was babysitting the infant child of a Navy colleague when he "pulled his penis out and let the baby play with it for a couple minutes."

      e.      ███████████████████████████████

Conway stated that he deliberately fondled the groin areas of Minor Victims 4 and 5 when the children played in a pool that Conway would frequent. Minor Victim 4 was between the ages of 9 and 10 years old when Conway touched him inappropriately. Conway stated that when he would play with the children in and around the pool, he would deliberately use his hands to touch the boys' genitalia and crotches under the guise of roughhousing with them. When interviewed by a police officer with specialized training in interviewing victims of child sexual abuse, Minor Victim 4 did not disclose any abuse.

      f.      Conway stated that he travelled to Six Flags Magic Mountain in August, 2015. He stated that on a previous visit, he discovered a peephole in a particular men's bathroom stall, which would allow him to surreptitiously observe male children using the bathroom stalls and allow Conway to look at their genitalia. He travelled to Magic Mountain hoping that the peephole still existed, but the hole no longer existed.

      g.      Conway stated that he has met at least two different 15-year old boys in online interactions and travelled across state lines and engaged in sexual acts with them.

      h.      Conway stated that he has been viewing child pornography on the internet for at least 20 years, since he was 25 years old. He has seen images of sexual acts performed on children as young as infants.

      i.      Conway has described himself as a "runner," someone who flees from legal troubles.

      j.      Conway stated that while in Sedona, Arizona in July, 2015, he deliberately exposed his genitalia to male children in the resort pool.

      k.      Conway stated that as a medical professional in the Navy, he once performed oral sex on a male patient while the patient was sedated.

Prior Conviction:

On February 17, 2004, in the Circuit Court for Harford County, Maryland, in Case No. 12-K-03-001012, Conway was convicted of Sexual Offense in the Third Degree, in violation of §3-307(a)(4) of the Maryland Criminal Law Article. Conway was sentenced to 10 years' incarceration, all of which was initially suspended, and five years' probation. The victim in that case was 15 years old.

According to police records and Conway's statements, Conway's conviction for Third Degree Sexual Offense is the result of his relationship with Minor Victim 6. ███████████████████████████████████████████████ Conway was 33 years old when he began a sexual relationship with Minor Victim 6, who was 15 years old. ███████████████████████████████████████████████ On June 18, 2003, Conway was arrested when he was discovered in his vehicle in the parking lot of the grocery store where Minor Victim 6 worked, while Conway was performing oral sex on Minor Victim 6. Conway had two prior encounters with Minor Victim 6, in which they performed oral sex on one another. Pursuant to a plea agreement, Conway pled guilty.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____            _____
Gary Scott Conway                          Date


_____            _____
Douglas Miller, Esquire                    Date

5